## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

**MICHAEL S. HELMS,**        )
)
      **Plaintiff,**       )
)
**v.**          )      **Case No. CIV-14-1003-W**
)
**DOCTOR SORENSON, et al.,**  )
)
      **Defendants.**    )

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, has brought this action under 42 U.S.C. § 1983, alleging a violation of his rights under the United States Constitution. United States District Judge Lee R. West has referred the matter to the undersigned for the entry of appropriate orders as to non-dispositive matters, and for the preparation and submission of proposed findings and recommendations as to dispositive matters, as referenced in 28 U.S.C. § 636(b)(1)(B) and (C).

Defendants have filed a Motion for Summary Judgment **(ECF No. 57)** and a court-ordered Special Report (ECF No. 47). Plaintiff filed a response to the summary judgment motion and Defendants replied. (ECF Nos. 68 & 69). Plaintiff has also filed an Application for Appointed Counsel. **(ECF No. 65)**. For the reasons discussed below, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED** and that Plaintiff's Application for Appointed Counsel be **DENIED**.

## I.      BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at Lawton Correctional Facility ("LCF"). (ECF No. 1:1). Mr. Helms identifies Defendant Sorenson as a physician providing medical care to

Plaintiff and Defendant Stouffer as LCF's Health Services Administrator. (ECF No. 1:1-2). Plaintiff alleges that in 2005, prior to his transfer to LCF, he injured his back in an accident which resulted in a crushed disc in his back and "syotica" in his left hip, and that these conditions cause pain in his back, and neuropathy in his feet. (ECF No. 1:2; 1-3:1). Prior to transferring to LCF, Plaintiff states that he had been taking Neurontin, Mobic, and Baclofen to treat his pain, and that he had been provided "medical shoes" for the neuropathy. (ECF No. 1:2; 1-2:2-5; 1-3:1-2).

Mr. Helms alleges that Defendants Sorenson and Stouffer have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by ignoring his complaints related to his back injury, lying to him about the existence of records which had documented the injury and denying him adequate medical care in the form of medication, medical shoes, a shower chair, a bucket, a special mattress, and an MRI.

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment, arguing the absence of deliberate indifference to Plaintiff's medical needs. According to Defendants, Plaintiff merely disagreed with the medical treatment he was provided, which does not rise to the level of an Eighth Amendment violation. (ECF No. 57:12-15).

## III.   STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Once a moving party shows entitlement to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must present some evidence, other than its initial pleadings, to show that there is more than just a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Celotex*, 477 U.S. at 324 (quoting Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by [other sworn evidence], designate 'specific facts showing that there is a genuine issue for trial.'"). In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

To defeat a motion for summary judgment, evidence must be based on more than mere speculation, conjecture or surmise. *Rice v. United States*, 166 F.3d 1088, 1091-1092 (10th Cir. 1999). Moreover, the existence of a factual issue does not preclude entry of summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side. *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999). Conclusory allegations will not create a genuine issue of material fact defeating a summary judgment motion. *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences

from those facts in favor of that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## IV.    SUMMARY OF PLAINTIFF'S CLAIMS

Mr. Helms' Complaint contains three Counts for relief.  In all three counts, Mr. Helms alleges: "My eighth amendment was violated when Dr. Sorenson and Shirley Stouffer ignored my medical needs which has left me in unbearable pain and caused me to suffer." (ECF No. 1:3-4).

### A.    Count One

In Count One, Mr. Helms alleges he was denied adequate medical care or diagnosis on June 17, 2014, and denied adequate medical care on July 3, 2014 and July 24, 2014. (ECF No. 1:3). These dates refer to Plaintiff's first appointment with Dr. Sorenson (June 17, 2014) and Ms. Stouffer's denial of Plaintiff's requests for "adequate medical attention" in the form of "medications" and "medical shoes." (July 3, 2014 and July 24, 2014). (ECF No. 1:2-3; 1-2:1-5; 47-1:13, 57-5).

### B.    Count Two

In Count Two, Mr. Helms alleges he was "denied adequate medical care or diagnosis on a shower chair and bucket . . . on July 31st, 2014 and September 11th 2014" and "denied August 4th 2014 [and] August 19th 2014  . . . [because] they do not carry medical mattress's [sic] at this facility." (ECF No. 1:3). These dates refer to Defendant Stouffer's responses to Plaintiff's requests for a shower chair and a bucket (July 31, 2014 and September 11, 2014) and Ms. Stouffer's responses to Plaintiff's

requests regarding the status of a medical mattress that Dr. Sorenson had ordered for Mr. Helms (August 4, 2014 and August 19, 2014). (ECF No. ECF 1-5; 1-6; 1-7; 1-8).

### C.    Count Three

In Count Three, Plaintiff alleges he was "denied adequate medical care and diagnosis when [he] was denied a new MRI on September 3rd 2014 and again on September 11th, 2014." (ECF No. 1:4). Those dates refer to Ms. Stouffer's responses to Plaintiff's requests for an MRI. (ECF No. 1-11; 1-12).

### D.    Summary

All of Plaintiff's claims stem from his 2005 back injury which he alleges causes pain in his back, and pain, numbness, and burning in his feet. Prior to his arrival at LCF, Plaintiff claims that he was receiving particular pain medications and medical shoes to treat the conditions. Mr. Helms believes that the Defendants were deliberately indifferent to his serious medical needs by ignoring his complaints about his back injury, denying the existence of evidence which documented his injury, and denying him particular pain medications, medical shoes, a shower chair, a bucket, and an MRI.

## V.    VIOLATION OF THE EIGHTH AMENDMENT THROUGH DELIBERATE INDIFFERENCE

The Constitution, through its Eighth Amendment, imposes on state governments an "obligation to provide medical care for those whom [they are] punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if they fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). However, "[b]ecause society does not expect that prisoners will have unqualified access to health care," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), an inmate

cannot hold a prison official liable unless the inmate shows that he or she suffered "acts or omissions sufficiently harmful to evidence deliberate indifference to [the inmate's] serious medical needs," *Gamble*, 429 U.S. at 106. "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*

The Tenth Circuit "recognize[s] two types of conduct [that] may constitute deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition." *Self v. Crum*, 739 F.3d 1227, 1231 (10th Cir. 2006). "The test for constitutional liability" in either case "involves both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted). To prevail, Plaintiff must demonstrate: (1) objectively, the harm he complains of is sufficiently "serious" to merit constitutional protection and (2) Defendants were subjectively aware of a substantial risk to Plaintiff's health or safety and acted in purposeful disregard of that risk. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

With regard to the objective component, "[a] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). To establish the subjective component—i.e., deliberate indifference to a substantial risk of harm—Plaintiff must show that the

prison official in question acted with a "culpable state of mind." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The element is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Because the Court should conclude that Mr. Helms has failed to satisfy the subjective prong, the Court need not consider whether he has satisfied the objective prong. *See Fairbanks v. Lampert*, 2016 WL 1394239 at 2 (10th Cir. April 8, 2016) (unpublished op.).

## VI.    COUNT ONE

In the Complaint, Mr. Helms references three dates on which he believes that Defendants violated his Eight Amendment rights--June 17, 2014, July 3, 2014, and July 24, 2014. (ECF No. 1:3). These dates correspond to written complaints and responses submitted by Mr. Helms in the form of a request to staff, a grievance, and a grievance appeal. In light of the allegations in those documents and liberally construing the Complaint, Count One presents three allegations of deliberate indifference: (1) Defendant Sorenson ignored Plaintiff's complaints regarding his back injury and related pain and lied regarding the existence of medical records which documented his back injury, (2) Plaintiff was denied particular pain medication, and (3) Plaintiff was denied medical shoes. But the Defendants have presented evidence which disproves Plaintiff's claims. Dr. Sorenson acknowledged Plaintiff's back injury and the existence of supporting documentation, and prescribed pain medication for his back injury. Plaintiff

was also prescribed medication to treat his feet and offered an alternative solution to his request for special medical shoes. As a result, Defendants are entitled to summary judgment on Count One.

### A. Claims that Dr. Sorenson Ignored Plaintiff's Complaints of Back Pain and Denied the Existence of Supporting Documentary Evidence

On June 17, 2014, Mr. Helms saw Defendant Sorenson for the first time. (ECF No. 1:2-3; 1-2:2-5; 47-1:13, 57-5). On that same date, following the appointment, Mr. Helms filed a request to staff with Ms. Stouffer, alleging that Dr. Sorenson had: (1) ignored Plaintiff's complaints concerning his back injury and related pain, and (2) lied, denying the existence of x-rays or MRIs in Plaintiff's "medical jacket" documenting the injury. (ECF No. 1-2:2-5). According to Plaintiff, he was denied "adequite [sic] medical care or diagnosis" and he "needed adequate medical attention and to see a competent doctor." (ECF No. 1:3; 1-2:4). On July 3, 2014, Defendant Stouffer responded, stating that Plaintiff was receiving adequate care from a competent doctor. (ECF No. 1-2:4). On July 8, 2014, Mr. Helms submitted a grievance to the warden, reiterating his complaints about Dr. Sorenson. (ECF No. 1-2:2-3). The undisputed evidence proves that Defendant Sorenson did not ignore Plaintiff's complaints of back pain or deny the existence of supporting documentary evidence.

In Dr. Sorenson's June 17, 2014 treatment notes, he wrote that Plaintiff presented with a chief complaint of "Low back pain, chronic." (ECF No. 47-1:13; 57-5). Dr. Sorenson then wrote: "Mr. Helms presents with chronic lower back pain since 2005 after an injury at work (butchered hog fell on him). He has had multiple imaging

procedures including MRI of the L/S spine which demonstrate degenerative disc disease at multiple lumbar levels. There has been no discussion of compressive neuropathy/myelopathy." (ECF No. 47-1:13; 57-5). Dr. Sorenson diagnosed Plaintiff with "chronic low back pain" and "Hx Lumbar Degenerative Disc Disease wo myelopathy." (ECF No. 47-1; 57-5). Thus, contrary to Plaintiff's allegations, Dr. Sorenson acknowledged his complaints of back pain and supporting documentary evidence.

## B. Claims of Deliberate Indifference Through the Denial of Pain Medication

On the date Dr. Sorenson first saw Plaintiff, he diagnosed chronic back pain and prescribed Mobic, 7.5 mg, twice daily, to treat the injury and related pain. (ECF No. 47-1:13-14; 57-5). Mr. Helms stated that before arriving at LCF, he had been taking Neurontin, Mobic, and Baclofen. (ECF No. 1-3:1). On July 8, 2014, Mr. Helms submitted a grievance to the warden, requesting pain medications. (ECF No. 1-2:2-3). On July 24, 2014, Defendant Stouffer responded, stating that Mr. Helms was receiving proper medication for his diagnosis. (ECF No. 1-2:1).

It appears as though Plaintiff is arguing that Dr. Sorenson should have prescribed Neurontin and Baclofen in addition to the Mobic. *See* ECF No. 1-3:1; 1-2:2. (Plaintiff's statements that he had previously been taking Baclofen and Neurontin and his request to "put me back on medications."). But this argument fails for two reasons. First, simply because Plaintiff was prescribed these medications at a former facility does not mean that he was entitled to receive the same medications at LCF. *See Askew v. Davis*, 613 Fed. Appx. 544, 547 (7th Cir. June 2, 2015) (unpublished op.) ("[U]nder the

Eighth Amendment, prison medical personnel . . . are not required to defer to a prior doctor's diagnosis; rather, they are free to make their 'own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on . . . professional judgment and does not go against accepted professional standards.'"). (quoting *Holloway v. Delaware Cnty. Sheriff,* 700 F.3d 1063, 1074 (7th Cir. 2012).

Second, Dr. Sorenson explained that he was not approved to prescribe Neurontin to treat Plaintiff's back injury. (ECF No. 47-1:25). Thus, his failure to prescribe that particular medication to Plaintiff was directly the result of prison policy, not as a result of any deliberate indifference directed at Plaintiff. It is true that an unconstitutional policy may provide a basis for a claim of deliberate indifference. *See Dodds v. Richardson*, 614 F.3d 1185, 1196 (10th Cir. 2010). However, Mr. Helms has not challenged the constitutionality of the policy which prevented Dr. Sorenson from prescribing Neurontin to treat Plaintiff's back injury.

## C. Claim of Deliberate Indifference Through the Denial of Medical Shoes

In the Complaint, Mr. Helms states that at a former facility in Holdenville, he had been diagnosed with neuropathy in his feet and "given medical shoes." (ECF No. 1:2). Plaintiff's first request for the shoes was in a grievance dated July 8, 2014. (ECF No. 1-2:2). On July 24, 2014, Defendant Stouffer denied the request, stating that there existed no medical basis for a prosthetic referral for medical shoes and that Mr. Helms could purchase shoes from the canteen. (ECF No. 1-2:1). In the absence of any documentation that Plaintiff had been prescribed medically necessary special shoes by a

doctor at LCF, Defendant Stouffer acted reasonably in her denial and suggestion that Mr. Helms purchase shoes from the canteen. Her actions did not violate the Eighth Amendment, despite Plaintiff's statement that he had previously been given medical shoes at a different facility. *See Norfleet v. Webster,* 439 F.3d 392, 393, 396–97 (7th Cir.2006) (prison doctor was not deliberately indifferent when he did not provide inmate with soft-soled shoes that had been provided at a previous prison).

On August 20, 2014, Plaintiff first complained to Dr. Sorenson of foot pain and numbness and requested orthopedic shoes. (ECF No. 47-1:46). In response, Dr. Sorenson diagnosed neuropathy in Plaintiff's lower extremities and treated the complaints by: (1) continuing prescriptions for Mobic and Tylenol-3, (2) allowing Plaintiff to receive cold and/or warm compresses, as needed every four hours, and (3) referring Mr. Helms to purchase shoe insoles at the canteen. (ECF. No. 47-1:46-47). In late October and early November 2014, Plaintiff submitted multiple "sick call" requests for his foot pain. (ECF No. 47-1:54-63). On November 4, 2014, Dr. Sorenson saw Mr. Helms and noted Plaintiff's complaints of "'shooting' pain in the feet . . . like "[he was] walking on nails." (ECF No. 47-1:64-66; 57-10). Dr. Sorenson diagnosed Plaintiff with peripheral neuropathy and prescribed 600 mg of Neurontin, twice daily, to treat the condition. (ECF No. 47-1:64-66; 57-10).

On November 17, 2014, Plaintiff requested to see a doctor "to discuss getting some shoes to help with my neuropathy." (ECF No. 47-1:74). Four days later, Mr. Helms saw Dr. Sorenson, who treated Plaintiff's complaints by increasing Mr. Helms' Neurontin prescription to three times daily. (ECF No. 47-1:98).

In an additional effort to obtain the shoes, Mr. Helms alleged that he was financially unable to afford shoe insoles at the canteen. (ECF No. 47-1:71, 98; 68:2). Financial inability which disallowed access to the shoe insoles might present a valid argument under the Eighth Amendment if the insoles were the only course of treatment offered to Mr. Helms to treat the neuropathy. *See generally Perkins v. Cummings*, 1997 WL 94267, at 3 (10th Cir. Feb. 3, 1997) (unpublished op.) (dismissing complaint which alleged that inmate was financially unable to afford hygiene items at the canteen, noting that only deprivations of "'essential human needs" trigger the Eighth Amendment proscription against cruel and unusual punishment." *Id.* at 940–41).

But the Court should reject Mr. Helms' argument regarding a financial hardship because the shoe insoles presented an *alternative* course of treatment in addition to the Neurontin prescription. To the extent that Plaintiff was not satisfied with the increase in medication and would have preferred the "medical shoes," Mr. Helms merely disagrees with Dr. Sorenson's medical judgment concerning the most appropriate treatment. But a disagreement does not provide a valid basis for relief under the Eighth Amendment. *See Gee v. Pacheo*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.") (citing *Estelle v. Gamble,* 429 U.S. 97, 106-107 (1976)).

### D.    Summary

The undisputed facts show that Defendants Stouffer and Sorenson have not been deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. Upon Dr. Sorenson's first examination of Mr. Helms, the doctor recognized

Plaintiff's back injury and supporting documentary evidence. He also immediately prescribed pain medication, and added additional medication upon Plaintiff's continued complaints. When Mr. Helms requested special shoes from Defendant Stouffer, she properly responded to the request, noting that Mr. Helms could purchase shoes at the canteen, because his records lacked a prosthetic referral for special shoes. When Dr. Sorenson became aware of Plaintiff's complaints of foot pain, the doctor adequately treated the complaints by first continuing Plaintiff's pain medication, and allowing cold and/or warm compresses to treat the pain, and offering shoe insoles from the canteen as an alternative. Upon continued complaints of pain, Dr. Sorenson prescribed Neurontin and ultimately increased the dosage. Under these circumstances, the Court should conclude that Defendants did not exhibit deliberate indifference and are entitled to summary judgment on Count One.

## VII.   COUNT TWO

In Count Two, Plaintiff alleges Defendants were deliberately indifferent to his back and foot pain when they denied him a shower chair, a bucket, and a special mattress. According to Mr. Helms: (1) he needed a shower chair because standing in the shower aggravated his back pain, (2) he needed a bucket in which to soak his feet to relieve pain caused by neuropathy, and (3) he needed a special mattress to help alleviate his back pain. (ECF No. 1-5:1; 1-6:1; 1-7:1; 1-8:1; 47-1:83, 87). Defendants have presented evidence which proves a lack of deliberate indifference with respect to these claims. Mr. Helms received a shower chair and Dr. Sorenson ordered Plaintiff a special mattress for his back pain. And although Mr. Helms was denied a bucket to soak

his feet, the denial does not violate the Eighth Amendment because Plaintiff was otherwise receiving treatment for his foot neuropathy. Accordingly, Defendants are entitled to summary judgment on Count Two.

## A. Claim of Deliberate Indifference Through the Denial of a Shower Chair and Bucket

On July 26, 2014, Mr. Helms submitted a grievance to Defendant Stouffer, requesting a shower chair and a bucket. Mr. Helms stated that he needed the shower chair because standing in the shower aggravated his back pain, and he needed a bucket to soak his feet to relieve pain caused by neuropathy. (ECF No. 1-5:1). On July 31, 2014, Ms. Stouffer responded, telling Plaintiff to see the doctor regarding his requests. (ECF No. 1-5:1).

On August 20, 2014, Dr. Sorenson saw Plaintiff, who complained of numbness in his feet and low back pain. (ECF No. 47-1:46, 57-9). At that time, Dr. Sorenson noted that Plaintiff had requested special shoes. (ECF No. 47-1:46, 57-9). The record is silent regarding any request for a shower chair or bucket. (ECF No. 47-1:46, 57-9). In response, Dr. Sorenson diagnosed neuropathy in Plaintiff's lower extremities and treated the complaints by continuing prescriptions for Mobic and Tylenol-3 for the back pain, (2) allowing cold and/or warm compresses, as needed every four hours, and (3) referring Mr. Helms to purchase shoe insoles at the canteen. (ECF. No. 47-1:46-47).

On August 28, 2014, Plaintiff submitted a request to staff to Ms. Stouffer, again requesting a shower chair and bucket. (ECF No. 1-6:1) In the document, Plaintiff acknowledged that the doctor had already denied these requests, and on this basis Ms. Stouffer also denied the request. (ECF No. 1-6:1). Beyond Plaintiff's allegations, there is

no record that he had requested the shower chair and bucket to Dr. Sorenson at this time. But even if he had, and the doctor had denied the requests, it was his prerogative to do so, as he was treating Plaintiff's back pain with medication and his foot ailments by offering cold and/or warm compresses and shoe insoles at the canteen. And as discussed, in November, 2014, Dr. Sorenson prescribed Neurontin for Plaintiff's neuropathy, and then increased the dosage upon further complaints of foot pain. *See supra*. Because Dr. Sorenson was treating Plaintiff's back pain and neuropathy with medication, Plaintiff's requests for a shower chair and a bucket merely represent a disagreement regarding Dr. Sorenson's prescribed course of treatment. As previously discussed, such disagreement cannot form the basis of an Eighth Amendment violation. *See Gee v. Pacheo*, 627 F.3d 1178, 1192 (10th Cir. 2010).

Even though Plaintiff had no legitimate right to the shower chair and bucket, Dr. Sorenson submitted an order for a shower chair following Plaintiff's request on December 16, 2014. (ECF No. 47-1:102; 57-12). The chair was ultimately issued on December 29, 2014. (ECF No. 57-20). On January 11, 2015, Plaintiff requested a different shower chair because the one he was issued had a crack in it and the screws kept coming out. (ECF No. 47-1: 86). Ms. Stouffer replied that no other chair was available. (ECF No. 47-1:86). But Mr. Helms does not allege that he was unable to sit in the chair, and in fact, Plaintiff concedes that the chair has provided him relief. *See* ECF No. 68:3 (statement in Plaintiff's Response to the Motion for Summary Judgment that "the only treatment or help the defendants have given me are medication and the use of a shower chair.").

Mr. Helms was issued a shower chair, but not issued a bucket. Nonetheless, his neuropathy and back pain were being treated through medication. As a result, Plaintiff was not entitled to the shower chair or bucket, even though he believes otherwise.

**B.    Claim of Deliberate Indifference Through the Denial of Medical Mattress**

On July 11, 2014, Dr. Sorenson saw Plaintiff for his low back pain. At that time, the doctor's treatment notes indicate that the "Plan of Action" was to order an "eggcrate mattress" to help alleviate Plaintiff's back pain. (ECF No. 47-1:25-26). On July 25, 2014, Dr. Sorenson submitted the order for the mattress. (ECF No. 47-1:25-26, 37).

On July 30, 2014, Plaintiff inquired about the status of the mattress and on August 4, 2014, Defendant Stouffer replied, stating that the request had been submitted. (ECF No. 1-7:1). One week later, Plaintiff again inquired about the status of the mattress. (ECF No. 1-8:1). On August 19, 2014, Ms. Stouffer responded, and explained the prison's three-step procedure which was required to obtain the mattress: (1) the doctor had to write an order, (2) a referral had to be submitted because it was a special order item, and (3) if the mattress was approved, it would be ordered and issued to Mr. Helms upon delivery. (ECF No. 1-8:1). The record does not indicate whether the mattress was ever delivered to Plaintiff. But the information is irrelevant, for two reasons. First, pursuant to prison policy it appears that Dr. Sorenson did everything in his power to satisfy Plaintiff's request for the mattress. But even if he had denied Plaintiff's request, the fact remains that Mr. Helms was receiving medication to treat his back pain and he was not entitled to a preferred course of treatment, in the form of a mattress, as previously discussed. *See Callahan v. Poppell*, 471 F.3d 1155,

1160 (10th Cir. 2006) (prisoners do not have a right to a particular course of treatment).

### C. Summary

Defendants have met their burden of proof establishing that they did not act with deliberate indifference regarding Plaintiff's serious medical needs involving his back and foot pain by denying him a shower chair, bucket, or special mattress. Dr. Sorenson treated Plaintiff's foot and back pain with medication, Plaintiff was issued a shower chair, and Dr. Sorenson ordered Mr. Helms a special mattress. As a result, Defendants are entitled to summary judgment on Count Two.

## VIII. COUNT THREE

In Count Three, Plaintiff alleges deliberate indifference when he was "denied a new MRI on September 3 2014 and again on September 11, 2014." (ECF No. 1:4). The Court should conclude that Defendants did not exhibit deliberate indifference in denying Plaintiff's request.

On August 26, 2014, Plaintiff requested a "new MRI" to "make a proper diagnosis." (ECF No. 1-11). Ms. Stouffer responded, and told Mr. Helms he needed to make an appointment with the doctor to discuss his request. (ECF No. 1-11). On September 5, 2014, Mr. Helms replied, stating that he had already twice asked the doctor about a new MRI, the doctor had denied the requests both times, and Plaintiff did not want to spend any more money on doctor's appointments. (ECF No. 1-12). Ms. Stouffer replied, explaining that only a doctor could order an MRI. (ECF No. 1-12). The record contains no other requests by Mr. Helms to obtain an MRI.

Plaintiff concedes that he twice requested an MRI from Dr. Sorenson, and was denied both times. Plaintiff apparently believes that an MRI would render a "proper diagnosis," but prison officials obviously disagreed. The disagreement, however, is not an act of deliberate indifference on the part of either Defendant, and Plaintiff is not entitled to an MRI just because he believes it would be in his best interest. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."). Dr. Sorenson acknowledged that Plaintiff "had multiple imaging procedures including MRI of the L/S spine which demonstrate[d] degenerative disc disease at multiple lumbar levels." (ECF No. 47-1:13; 57-5). Dr. Sorenson obviously believed that the MRI on record was sufficient to diagnose Plaintiff with "chronic low back pain" and "[History of] Lumbar Degenerative Disc Disease wo myelopathy" and treat Mr. Helms with pain medication, as previously discussed. In light of this treatment, Defendants did not act with deliberate indifference in denying Plaintiff an MRI. *See Fairbanks v. Lampert*, 2016 WL 1394239 at 2 (10th Cir. April 8, 2016) (unpublished op.) (affirming dismissal of complaint alleging deliberate indifference by denying inmate an MRI, because Plaintiff's back pain was being treated with medication and other means).

The undisputed facts show a lack of deliberate indifference in failing to order an MRI. As a result, Defendants are entitled to summary judgment on Count Three.

## IX. ALLEGATIONS IN PLAINTIFF'S RESPONSE

In his response to the Motion for Summary Judgment, Plaintiff alleges a delay in medical treatment for his back injury and foot neuropathy, for seven and ten months respectively. *See* ECF No. 68:1-2 ("[P]laintiff went 7 months before his back injury was taken serious and 10 months before his neuropathy was taken seriously."). A delay in the form of medical treatment can provide the basis for an Eighth Amendment claim. *See Sealock v. Colorado*, 218 F.3d 1205, 1210 (2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."). However, the Court should reject Plaintiff's allegations as the undisputed facts refute Plaintiff's claims.

On the very day that Mr. Helms first saw Dr. Sorenson complaining of back pain, the physician diagnosed chronic low back pain and prescribed Mobic, 7.5 mg., twice daily, to treat the injury and related pain. (ECF No. 47-1:13-14; 57-5). And on the date that Plaintiff first complained to Dr. Sorenson about foot pain and numbness, the doctor diagnosed neuropathy in Plaintiff's lower extremities and treated the complaints by continuing Mobic and Tylenol-3 and allowing cold and/or warm compresses, as needed every four hours, and told Mr. Helms that he could purchase shoe insoles at the canteen. (ECF. No. 47-1:46-47). Two months later, after continued difficulty with his feet, Dr. Sorenson prescribed 600 mg of Neurontin, twice daily, to treat the condition. (ECF No. 47-1:64-66; 57-10). And three weeks later, Dr. Sorenson increased the dosage to three times daily. (ECF No. 47-1:98). Thus, contrary to Plaintiff's complaints, Defendants did not delay in treating his back and foot pain.

## X.     PLAINTIFF'S MOTION FOR COUNSEL

Mr. Helms has filed an "Application for Appointed Counsel and Affidavit of Financial Inability to Employ Counsel." (ECF. No. 65). District courts are granted broad discretion with regard to the decision to request an attorney to represent an indigent litigant in a civil proceeding. *See Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991); 28 U.S.C. § 1915(e)(1). In exercising this discretion, the Court must consider a number of factors, including the merits of the litigants claim. *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). As previously discussed, Plaintiff's claims are without merit and Defendants are entitled to summary judgment as a matter of law. Accordingly, the Court should deny Plaintiff's request for counsel.

## XI.     CONCLUSION AND RECOMMENDATION

The Court should conclude that neither Defendant Sorenson nor Defendant Stouffer exhibited deliberate indifference in violation of Mr. Helms' Eighth Amendment rights. The undisputed evidence shows that Plaintiff was provided adequate medical care. Plaintiff's difference of opinion regarding the type of care he believes should have been provided is insufficient to constitute an Eighth Amendment violation. As a result, it is recommended that Defendants' Motion for Summary Judgment **(ECF No. 57)** be **GRANTED** and Plaintiff's Motion for Counsel **(ECF No. 65)** be **DENIED**.

## XII.     NOTICE OF RIGHT TO OBJECT

The parties are hereby advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by **May 9, 2016**. *See* 28 U.S.C. § 636(b)(1); and Fed. R. Civ. P.

72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## XIII.  STATUS OF THE REFERRAL

This Report and Recommendation disposes of all issues currently referred to the undersigned magistrate judge in the captioned matter.

**ENTERED** on April 21, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE